Our first case today is 4-12-0996, People of the State of Illinois v. Dakota Pherigo. Attorney Kimmel is here on behalf of the appellant and Attorney Johnson is here on behalf of the state. Mr. Kimmel, are you ready to proceed? May it please the court. Counsel? My name is Darren Kimmel and on behalf of the Office of the State Appellate Defender, I represent the appellant, Mr. Dakota Pherigo. Ambushing your opponent with the element of surprise provides a big tactical advantage both in warfare and in a criminal courtroom. But that's the reason we have mandatory discovery rules to prevent either party from gaining an unfair advantage by introducing surprise evidence at trial. The prosecutor here broke the most serious of those rules by introducing undisclosed evidence of an alleged statement by the defendant, Cody, himself. Illinois courts call that maneuver trial by ambush because the purpose of this discovery rule, Supreme Court 4-12-A-2, which governs a defendant's own statements, is to protect the accused from surprise, unfairness, and inadequate preparation. The prosecutor's trial ambush here prejudiced Cody and the lower court abused its discretion by failing to eliminate that prejudice. The case law is also clear on the state's various procedural arguments. Two facts distinguish this case from the cases the state relies on. This was an alleged defendant's statement and it came out in live trial testimony for the first time. That sets this case apart. As a matter of fundamental fairness, this court should reverse and remand for a new trial. Turning to the first point, the prosecutor's trial ambush prejudiced Cody. Our Supreme Court created in People v. Weaver, the seminal controlling case on this issue, created a four-part test to determine the prejudice resulting from this particular type of discovery violation. Those four factors are the prosecutor's willfulness in the failure to disclose, the likelihood that prior notice could have helped the defense discredit the evidence, the closeness of the evidence at trial, and the strength of the undisclosed statement. All of these factors favor Cody here. Mr. Kimmel, couldn't defense counsel have made an objection at the trial level and then prevented this all from coming in? Absolutely, Your Honor. And that would have been ideal had that happened. But the cases in Illinois are uniform on this issue. And it's a longstanding rule that this particular type of discovery violation, because defense counsel had no idea it was coming, he could not have been prepared. And for purposes of fundamental fairness, this court and its sister districts hold that this issue should not be waived for untimeliness. That argument essentially would allow the state to profit from sandbagging the defense. So that because defense counsel was unprepared by result of the state's failure to disclose, then the issue would then be waived. That would incentivize the prosecution to do this more often. It's good sound policy to not recognize waiver on this particular discovery violation. But the trial judge said if there had been an objection, he could have kept this out. He was inclined. I think he would have ruled that way if it had been brought to his attention. I agree with that reading of the record. But the trial court got the law wrong on that particular issue. Is the law that per se we have to reverse if this happens? No, Your Honor. But I think People v. DeBoard is the fourth district case that's the most recent on this issue. There's not a lot of fourth district law on this. But in DeBoard, there was a quick objection there. It happened after the statement came in. So even if what happened in DeBoard happened here, that wouldn't have satisfied what the trial judge said, which was essentially he wanted an objection that came before the answer or interrupted it to prevent the statement from coming in. But in DeBoard where an objection came in just after the statement was complete, the court said it would be unduly burdensome to hold that the objection was tardy because the defense didn't know it was coming. How can you object to something you're not prepared for? You don't know it exists. But even if that's true, I guess the point I'm asking you about is what would we have to find to say we would reverse for this discovery violation? It would be an abuse of discretion by the trial court in that it should have granted an abuse. But what would make it an abuse of discretion? Prejudice to the defendant? Yes, Your Honor, under the four-part Weaver test. So I think that's where I'd like to hear you argue the prejudice that the client experienced as a result of this discovery violation. Absolutely. So all four of the Weaver factors which control here favor Cody. And that's the test to determine the amount of prejudice resulting from the violation. The first factor, the State does not dispute that this was a willful failure to disclose. And Illinois courts hold that if there's any doubt, it should be presumed to be willful. But the prosecutor, through a series of deliberate questions, brought out the specific statement. So it was apparently willful. The second factor, because this was a trial by ambush, Illinois courts hold that Cody doesn't have to show what he would have done if he had had prior notice because of that situation. But even if we put aside that presumption, just like in People v. Weaver, the Supreme Court there noted that the defendant could have interviewed other potential witnesses who could have been present for the statement. And those witnesses might have refuted that the statement ever occurred or put a different interpretation on it. Just like in Weaver, this was a trial by ambush. And the statement that came out here allegedly happened in a GED class when both the co-defendant, who was the State's witness, Dalton Starkey, and my client, Cody, were together in this GED class, allegedly. One of the factors is closeness of the evidence. Why is this close? Your Honor, this was a case that came down to a credibility determination between the State's witness, who was a co-defendant charged with the same crimes and received a plea deal, and my client, Cody. How much different is their testimony? The only way that it's different is whether Cody was guilty or not of accountability. Cody said in his... So without this statement, you don't think there's evidence of accountability? If the jury believed Cody over Dalton Starkey, he would have been acquitted of these crimes. That was his testimony. In fact, the jury did acquit Cody of the most serious crime. So there was some sympathy from the jury here. The problem is both of these people had credibility issues. Both co-defendants lied to the police initially before changing their stories. Cody did it in response to the police interrogation when they told him to do the right thing with no promise of a good deal, and he did. He told his story. Even then, they didn't believe him. They thought he was holding out. Dalton Starkey waited until three days before trial. He lied and said he wasn't present all the way up until three days before trial, and only then, after his attorney was able to negotiate a pretty good plea deal, did he then finger Cody. And that was after Cody had already named him as being present. So he may have had some motivation to get back at him. The other strange thing is that Dalton Starkey never... So he's driving this pickup truck. It's at night. There's four of them. The other two are in the back. Two of them are up front. Dalton's driving. He testifies repeatedly to what he assumed was happening in the back of the truck where the shooter was with Cody. He doesn't see Cody do anything incriminating. He keeps testifying. I assume he loaded the gun. I assume he held open the flap for the shooter to shoot out of. I assume he was part of the planning. He didn't witness any of that. And Cody says in his statement to the police, which is introduced in evidence, he never testifies. He says the opposite, that they used him as a patsy. He's a 17-year-old kid. He's not a gang member. The other three guys are gang members. They don't even know him very well. Dalton Starkey admits that. They used him as a patsy to steal shotgun shells from a Walmart. And then he says he's just along for the ride the rest of the time. That's a bad decision to hang out with these guys. But his version is that he's not part of the planning. He's not part of the execution of these shootings. If the jury believed him. This is more than a bad decision. It's accountability, isn't it? Not necessarily. If the only part that he was responsible for that he had knowledge of was the initial crime, the burglary, which was complete, Illinois accountability law does not necessarily include further events if he had no knowledge of that. If he was part of a bank robbery that was an ongoing crime, and his co-defendants committed other crimes while that was happening, the fact that that crime was not complete yet would include those further crimes. But the fact that the only thing in his version that he had knowledge of was already complete earlier, in the day before these events occurred. Which was what? He was responsible. He admitted to stealing shotgun shells from a Walmart. For what purpose was he stealing the shotgun shells? He says he didn't know. He says that he, again, was a 17-year-old kid. Didn't know these guys very well. And they pressured him to steal them. And he didn't want to initially. Did he link that with testing, the earlier testing of the shotgun? I'm sorry, Your Honor? Did he link that with earlier testing of the shotgun? So, Cody never testified. But I mean, is there a link? He says that he did not go in to get the shotgun. When they went to the house to pick up the shotgun, he says he stayed with the truck and he didn't see it. And there's not much testimony on what happened after that. Stark, he says he not only never saw Cody load the gun, he never saw him handle it. He never saw him do anything with the gun. So it's all these assumptions. But back to the broader point, these two conflicting stories, if you believe Cody, there's at least an argument that he was not guilty under an accountability theory. The jury still could have found him guilty. But there's at least an argument there. And so this is a close case. The overwhelming majority of Illinois courts hold that if you have a defendant's testimony or a statement, again, it wasn't testimony here, if you have a defendant's statement and a state witness who has credibility issues or even doesn't have credibility issues like Starky does here, that's a close case. It's up to the jury to determine credibility and decide who they believe. That's a close case. And that's not in doubt here. Now, the full- What about the testimony of Gert? Diana Gert, at best, says that, repeats a statement from Cody that said he was present, but he didn't participate in the shooting. He didn't fire the gun. The only thing we can get further than that is that she seems to think that Cody was bragging at the time. He's a 17-year-old kid. He's telling a story to his friends. He never incriminates himself, though. So, again, that's a credibility issue for the jury to determine. Diana Gert also has some testimony issues. She has two hearing aids. She testifies she's severely hearing impaired and has trouble understanding people and misses things quite often. She's not the best witness to bring this out, and she also seems to not like Cody very much. She says that he's always smiling and he stays over, he knows her daughter. It seems she didn't like him very much. So, at best, though, even with all that aside, she says Cody said he was present but didn't shoot the gun. That's not incriminating. And there's no other corroborative, incriminating evidence to go with Dalton Starkey's testimony. Didn't you mention that the target of the shooting was a Latin King? It was, Your Honor. Both targets. There was a shooting at a house where one Latin King, Jordan Graham, lived. No one was injured. And then they drove down the street a bit, saw another Latin King. And didn't she describe the defendant as having bragged about the shooting? I believe, Your Honor, the only testimony about bragging was from Diana Gert. I could be mistaken. That's who I was referring to. Diana Gert was not a witness for the shooting. She said a minute ago that those statements made to her were not incriminating. Those sound kind of incriminating to me. Well, what I was saying, Your Honor, is that the only statement was that he was present but was not a participant in the shooting. He didn't fire the gun. She said that he was bragging while he said this, and I only meant that that would be a question for the jury. That is, again, a credibility issue. It just seems to me that all that taken together is pretty strong evidence of accountability. And the jury may have believed it, but this was still a close case, and that if the jury had believed Cody over Starkey, he would have been acquitted of more crimes than he was already. Again, they acquitted him of the most serious crime. So the jury seemed to find this to be a close case, at least from its verdicts. And the case law in Illinois is clear that when you have two witnesses and the jury needs to choose between them, that's a close case, whatever it may look like to us on appeal. If there at least could have been a credibility determination that could have gone either way, Illinois courts consider that to be a close case. And I cited a few cases that also talk, in addition to that basic balancing of the witness credibility, that also talk about the fact that here the State's witness had serious credibility issues because he was a co-defendant charged with the exact same crimes, and he was testifying pursuant to a favorable plea deal. That makes this even more of a close case than it would have been had he been a pristine witness. Now, the fourth factor also favors Cody, and that's because the undisclosed statement here was powerful. It undermined Cody's credibility and strengthened the credibility of Dalton Starkey. So it skewed that balancing of these two witnesses. But additionally, it also undermined Cody's defense generally that because he was just a patsy for these gang members, he didn't know the shootings were going to happen later that night. The statement that comes out is essentially that Cody told Dalton Starkey to lie while they were both in jail. The lie that he proposes never actually gets used by anyone, which is odd. But he sounds more like a ringleader. He sounds more like he's in charge. Starkey says he told me to lie. And the prosecution brings this in on redirect after the defense has attacked Dalton Starkey's credibility. So the manner in which the prosecution deploys this move is specifically to rehabilitate Dalton Starkey's credibility versus Cody's. How old is Starkey? Do we know from the record? I don't believe it's in the record. I think I looked him up on DOC, and he's a little bit older, but all these guys are pretty young. So like 18 or 19? I don't remember exactly. He looked fairly young from his photograph. Everyone else but Starkey received 14 or 15 years in prison. Starkey got five and a half years in prison. Was he the only one who testified for the state? Yes, Your Honor. And he's the only one that has any knowledge on the witness stand of what happened inside the truck. And that's the key evidence in this case. All the other witnesses are outside. They testify to what happened afterwards. A ballistics expert testifies that you could fire this shotgun with two hands or with one hand. And that could go either way. Did everybody go to trial or did someone leave? I believe Starkey pled, Your Honor, but I'm not familiar with the details of the other cases beyond what's in the record here. But our courts talk at great length about evidence that undermines a defendant's credibility, when that credibility is an actual issue in the case. If the evidence is overwhelming in a case, it's not such a big deal if the defendant's credibility is impugned in one of these issues. The prejudice would be harmless. But here, credibility was a live issue. And the fact that this evidence that the jury was being asked to choose between two people who have lied to the police and then one of them is saying, I lied because that other guy told me to lie, that shifts the balance. It makes one person seem more credible than the other one, even if both of them have credibility issues. And Illinois courts say that that amounts to serious prejudice, where the defendant's credibility is at issue. They also say that when the statement actually undermines the defendant's defense, as it does here, that that's also a serious issue. Cody said that he was just a kid. He didn't know what was going on. And this statement makes it sound like he was somehow at least a peer of these three gang members or was somehow in charge of things. And that seems hard to swallow, considering the facts of this case. Now, because all of these factors weigh in favor of Cody, the resulting prejudice here seems to be extreme under the Weaver test. The lower court abused its discretion by failing to eliminate that prejudice. First, it erred procedurally by focusing on defense counsel's lack of a timely objection. Illinois courts have uniformly rejected that approach for decades on principles of fundamental fairness. Beyond the DeBoer case I talked about a moment ago, there are two great cases from the first district and the second district. That's People v. Furlong and People v. Eliasson. And Eliasson cites a number of previous appellate district cases going back through the years. They explain that defense counsel, because defense counsel was unaware that such a conversation in fact existed, and therefore cannot be faulted for failing to object to seemingly nonexistent evidence. And they went on to note that fundamental fairness requires us to consider the issue. Both of those cases involved a significant gap in time from the initial statement that was not objected to, which in those cases happened when the defendant was cross-examined by the prosecutor. No objection happened. It was only later on the state's rebuttal case, in both cases, when they attempted to bring in witnesses to prove up those statements they'd asked defense counsel, the defendant about cross-examination that defense counsel finally objected. That's a considerable gap. And the courts there in both cases said that we cannot, we have to consider this issue for purposes of fundamental fairness. Does it make a difference whether the defendant testified? I don't know that it does, Your Honor. Well, what's the credibility then? In what way? I'm sorry, I'm not quite sure how. Well, how does it attack the defendant's credibility if the defendant doesn't testify? His statement to the police was introduced into evidence, and the jury was able to view that evidence. And so they did have... Well, you kind of ignored his statement to the police, though, when you talked about the closeness and the accountability issue. I don't believe that... No, I mean, understandably, in your argument, you're going to focus on what Starkey says. But I think some of Justice Turner's questions could lead the court to the conclusion that the things he said himself are enough. I think that you have to balance that against the credibility issues of Dalton Starkey. I agree that Cody had credibility issues based on what he said. But the best that he says, the most he says in his statement to the police, is that he was there, but he didn't participate in the planning or execution of the shooting. He admits everything about the burglary of Walmart. Eventually. He lies about it first, but eventually he says, yeah, I did that. Everything after that, though, is in contention. He doesn't admit any of that to Diana Gert or to the police. There's no testimony on that, and there's no evidence of any sort. Dalton Starkey waits until three days before trial to change his story from, I was not present, to, I was present and Cody did all these things that I didn't witness, but I assume he did. There's credibility issues on both sides. So the court should not just focus on the credibility issues of Cody. It should look to the balancing of the two witnesses. They both have serious credibility issues. This court abuses discretion by refusing to grant a mistrial, and this court should reverse and remand for a new trial. Thank you. Thank you, Mr. Kimmel. You'll have a chance to rebuttal. Ms. Johnson? Good morning. May it please the court, Mr. Kimmel? The trial court here did not abuse its discretion in denying the motion for the mistrial. As argued in my brief, the defendant at no time objected to the testimony that Starkey offered. In not objecting, the trial court was not given an opportunity to correct the error if there was any error. To overcome the failure, and it also was not addressed in a post-trial motion, so the issue has been forfeited. To overcome it, defendant has to establish plain error. But again, it's the state's position that the trial court's handling of it was not error at all, and therefore you need not reach the plain error review. There is no question the state failed to disclose the statement. The testimony that was provided, or I should say the explanation that was provided by the state, was that on the Friday prior to the trial starting, there was a meeting with Starkey, and after that meeting, the assistant state's attorney said she received a phone call from Starkey's counsel, and in that phone call is when this information was shared with her. And she acknowledged she did not disclose it, so there is no question that that was an error. But there's also no question defendant didn't object. He did not accept the trial court's offer to admonish the jury, which would have been a reasonable alternative that was presented to him, and he did not seek a continuance. Considering all of those circumstances, the trial court's finding that there was no manifest necessity to grant a mistrial, a most drastic and severe sanction, was proper. I know we've addressed forfeiture, and so I will kind of jump into the prejudice argument, which is what Justice Pope, you had asked that it be addressed. First of all, I want to say that Weaver is a five-part test. It's not a four-part test. If you read Weaver, the fifth part is a feasibility of requesting a continuance. So I want to put that out there first. It is a five-part test. My cite to Lovejoy, for which defendant takes me to task in his reply brief, was not meant to be a misrepresentation of the factors. Lovejoy was decided by the Supreme Court in 2009. It is the most recent Supreme Court case to address the factors when judging whether a mistrial is appropriate for a discovery violation. Weaver was 32 years ago. Lovejoy cites to Sasewski, and I apologize if I'm not saying that correctly, and Sasewski identifies the exact same three factors that Lovejoy cites. Sasewski does mention that the State failed to disclose it. There's no argument of that. But the term willful, willfulness is not to be found. It's mentioned generally. But Sasewski plainly stated, quote, the factors are the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence, period. Doesn't Sasewski say somewhere else, among the factors to be considered are, and then it lists those three? That doesn't seem like an exclusive list to me. And it isn't. And again, Weaver also addressed a fifth factor, which is the feasibility of the continuance. And the point that I simply want to make is that in citing to Lovejoy, it was not an intention to dismiss other factors. I was citing to the most recent Supreme Court case to address these factors. Do you think Lovejoy is saying that willfulness is not a factor? No, I don't. Okay. I don't at all. I think, as you pointed out, it's not an exclusive list, but there are a multitude of factors to be considered. Here, one of those factors is there was no objection that was made, an objection that the trial court said that they would sustain. And I disagree that the State argued a mere utterance of the word objection would have been sufficient. These cases are distinguishable from the others where an objection was made possibly untimely, but an objection was made. An objection is not sufficient to simply say, I object. A general objection does not preserve an issue for appeal. It's to be timely, it's to be when the evidence is presented, or as soon as thereafter, and it's to state the relevant basis for it. So we're not suggesting that had he merely uttered the word objection, I wouldn't have made the argument that it was forfeited for failure to object. Would you concede that this was, if not trial by ambush, and even if inadvertent, it's just really sloppy and makes the State look bad? There's no question it was an error, and there's no question it was an embarrassment. Absolutely. But that alone is not sufficient. We have to establish, the defendant has to establish that it resulted in prejudice. And I disagree with the claim that the evidence was close. Throughout arguments today, and implicit in the brief, is this claim that there were two witnesses with credibility issues that the jury had to consider which one was more believable. That's not true. The State put on 14 witnesses. Yes, a lot of them were to the investigation process, but I think that Diana Garrett's testimony has been minimized, and not fairly so. She testified she has a hearing issue, but she also testified, I hear. And she testified that the defendant was there, and that he said he was involved with the shooting. Yes, he did not say he shot the gun. No, he would not identify the others. But he said, I was involved with it. And he was laughing, and he was bragging. Is that the word that she uses to describe his admission? Involved. Involved. In the testimony, that is what she said. So you have that. The jury had evidence that, again, contrary to this claim, that defendant just casually knew these people, wrong place, wrong time, bad judgment. In the statement that was presented to the jury, the defendant said that these same people had contacted him to commit a lick or a robbery against a gun store on another day. Now, granted, throughout defendant's statement, he gave conflicting testimony, and it was clear that much of it was lies. But how are we to judge based on what he said? If we're going to accept his testimony that he only purchased or stole the bullets, but he didn't intentionally participate in anything else, then let's accept the testimony that they also contacted him another day to commit a robbery against a gun store. This isn't a casual acquaintance. These are people who knew each other, at least on two occasions, by defendant's own admission. He was willing to be around them and participate. The testimony was that Starkey did not testify that he assumed the participation of defendant. Starkey testified, we discussed the plan. We discussed that we were looking for a fight. We discussed what we were going to do. We made a plan to go steal these bullets. He did say he did not see defendant handle the gun. He did not see defendant hold the topper open. But he said we collectively planned this. A reasonable inference for the jury to make from that is that they followed through with the plan, and that defendant held open the top of the topper while Cole shot the weapon out of the back. I just don't agree that the evidence here was close. Moving to the strength of the undisclosed evidence, I don't believe it was significantly strong. Defendant lied. We know that from the many, many accounts that he provided in his statement. Starkey lied. He admitted it on the stand. They both lied. Is it really that shocking to hear that prior to trial, they're still talking about a lie that could possibly get them out of responsibility for their actions? I don't think so. And I also note that at the hearing on the motion to reconsider evidence, the defense counsel acknowledged that it wasn't just the testimony of Starkey that was incriminating, but it was that and defendant's own statements, which was raised earlier here today. Aren't defendant's own statements incriminating? Well, at the hearing on the motion to reconsider, his defense counsel said, yes, that is the most incriminating evidence along with the evidence that Starkey presented to the trial. As for the likelihood that the disclosure would have helped discredit the evidence, I would like to explain my statement that I stand by and I would like to explain my brief that defendant acknowledged there wasn't anyone else who heard this. In defendant's brief, the statement is, Cody supposedly made this statement to Starkey during a GED class in jail where other witnesses were likely present. Given the defendant made the statement, defendant knows who was present when the statement was made. The inference that I am making based on this is, if the defendant is arguing there was likely somebody present, but not arguing there was somebody present, again, when defendant was there, he knows who was present, a proper inference is that there was no one else present to hear this. If there was, they would have been called to testify. He would have asked for the continuance. This evidence all supports why this fifth weaver factor, this feasibility of a continuance, and that's not been argued here. If there was someone else who heard it, and defendant himself would know, a continuance would have allowed that person to come and testify to it. During the trial, the defense counsel, who is surprised, turns to this highly educated, brilliant defendant, who is sitting there and said, and his first question is, do you know anything about this statement? Was anybody else present? Where did it happen? And on the basis of that interchange, that brief interchange, you decide who would ask for a continuance, or what's going on. I don't understand that argument. Defendant would have had to anticipate that Starkey was going to say what he said. Defendant may very well take the position, I never said that, and I don't know who was present. I mean, this would require instantaneous analysis by defense counsel. Well, defense counsel, when he objected, and they had the discussion on the fact that it hadn't been disclosed, there was an opportunity for him to seek a recess, which I think would have been granted. To inquire. To inquire about all of this, and then to make the decision from there. It is, again, one of those factors in weaver. I'm not suggesting it is the end-all, be-all factor, but it is one of them. And the fact remains that there wasn't a continuance that was sought here. And that is a factor that weighs against the defendant, that had a continuance, perhaps the continuance was not requested because it would not have benefited them to get a continuance. And truthfully, defendant would have known better than anyone else, and it was his responsibility to be candid with his counsel, who else was there when the statement was made. Considering all of these circumstances, I believe the defendant has failed to establish that he was prejudiced by what was clearly an error on the State's part in failing to disclose the statement that was made. And I would ask that the trial court ruling be affirmed. Thank you, counsel. Mr. Kimmel, rebuttal. May I please the court? The purpose of Rule 412A2, the discovery rule at issue here, is to protect the accused against surprise, unfairness, and inadequate preparation. The Supreme Court in People v. Weaver and the First District in the lower decision that generated that Supreme Court decision talked quite a bit about the importance of this specific rule because a defendant's own statements are such prejudicial evidence. A confession, a statement that is somewhat incriminating, it's a different type of evidence. It's the most prejudicial kind of evidence. Weaver talks at length about how the rule is mandatory and is meant to allow the defense to create its strategy for trial in advance with knowledge of all of the evidence. That was not possible here because this rule was violated. The State talks a bit about Weaver, including a fifth factor, the feasibility of a motion of granting a continuance. The State admits, however, that Weaver rejected that factor in that case, which is almost the exact same facts as this case. Weaver could not be more on point here. There was no initial objection. It was brought out in a motion for mistrial after the conclusion of testimony, exactly like here. It was a trial by ambush, and it was a defendant's statement. There was closely balanced testimony of different witnesses. It's exactly on point. The State has not attempted and is unable to distinguish Weaver besides noting that it is 30 years old. All Illinois courts have continued to cite Weaver. Chizinski, the case the State relies on, distinguished Weaver and reaffirmed the rule of Weaver. People v. Robinson in 1993, again, distinguished and reaffirmed the rule of Weaver. Even People v. Lovejoy, 2009 Illinois Supreme Court case, relies on Weaver, even though that case dealt with expert testimony. It was not a defendant's statement there. Weaver has been the law of the land for quite some time, and it cannot be distinguished here. It's directly on point. And there the Court said that the defendant's not requesting a continuance was not fatal to his position because this was a trial by ambush, and that is so prejudicial. In both Weaver and here, defense counsel noted that he wasn't going to be able to undo this damage at trial. And the Illinois Supreme Court in Weaver said that that makes sense. This is so prejudicial. That's exactly what happened here. Defense counsel in the statement with the Court said, I can't do anything with this at this point. But, Mr. Kimmel, the trial judge could have said to the jury, Ladies and gentlemen, we have rules that we operate under when we conduct trials, and the State's required to disclose these statements ahead of time, and they make no disclosure here, and I'm directing you. You may not consider it. You must set it aside. But defense counsel did not want the judge to address the jury. That's true, Your Honor. I think that might present a problem. I do think it's somewhat of a problem, and it's difficult because these different remedies are kind of shades of gray. And yet you can't criticize defense counsel too much because maybe as a matter of strategy he didn't want all that attention brought to the statements. Exactly, Your Honor. And the judge actually mentioned that first. The judge said, we can admonish the jury if you'd like. I'll leave it up to you, defense counsel. Or we could just leave it alone and not accent the issue. So implicit in the judge's offer was an element that might accentuate this issue. And defense counsel said exactly that. No, no, I don't want to talk about it anymore because it would only bring it up and draw more attention to it. I think this Court's case in People v. Lewis is very helpful on this point. Lewis involved a defendant's statement against a victim's statement, and it was a balancing of their credibility. And another witness improperly testified that the victim had offered to take a polygraph test, and that enhances the victim's credibility and impugns the defendant's credibility. The trial court offered to admonish the jury, or it might have actually admonished the jury, I don't recall. But this Court said that that was not enough because that prejudice of calling the defendant a liar and elevating the state's witness was so prejudicial that it would not be enough in that case, and a new trial had to be granted. People v. Lewis is directly on point for that. I think People v. Weaver makes this case fairly clear. This type of evidence is so prejudicial that it cannot be dealt with at trial when there's a trial by ambush. The state also talks a bit about Diana Girt's testimony. I think it's important to actually use the words that Diana Girt used, and I quoted her testimony on page 15 of the opening brief. The two things that she says that could be interpreted to what the state says that Cody is involved were that he didn't do the shooting, but was with the two people that did, and that he was bragging. That's it. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.